UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

CAROL MCLEAN,

                Plaintiff,

        v.

METROPOLITAN JEWISH GERIATRIC
CENTER,

                Defendant.

---------------------------------------------------------------x

**MEMORANDUM & ORDER**

11-CV-3065 (PKC)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Carol McLean, proceeding *pro se* and *in forma pauperis*, alleges in her complaint employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA"), based on her race, national origin, age, and disability. (*See* Dkt. 1 at 1, 3.)[1]   Before the Court is Defendant Metropolitan Jewish Geriatric Center's ("Defendant" or "Metropolitan") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

       In opposition to the motion, McLean filed a letter and accompanying affidavit (Dkts. 40, 47), but no counter statement, as required under Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York ("Rule 56.1 Statement" or "St."). Generally, a party's "failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being

---

[1] Although McLean alleges an ADA violation, she has presented no evidence or argument in support of that claim. Because the record, pleadings, and motion papers are bereft of any allegation or evidence with respect to McLean's purported disability, the Court does not address in detail McLean's disability claims, and instead analyzes them alongside McLean's racial, age, and national origin discrimination claims.

undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (citations omitted). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). In the interests of justice, the Court will excuse pro se plaintiff's failure to comply with her obligation to submit a counter 56.1 Statement in opposition to the motion. Accordingly, the Court will deem admitted only those facts that are supported by the record and not controverted by other admissible evidence. *See Jessamy*, 292 F. Supp. 2d at 504. Furthermore, the Court is mindful of its obligation to construe pro se pleadings and submissions "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

For the reasons set forth below, Metropolitan's motion for summary judgment is granted.

## BACKGROUND

The following facts, drawn from Metropolitan's Rule 56.1 Statement and accompanying exhibits, the pleadings, and the parties' submissions with respect to the instant motion, are undisputed unless otherwise noted.

I.   McLean's Claims

McLean is an African-American female, who was approximately 59 years old at the time of the complaint and, at all relevant times, was a nurse's assistant at Metropolitan. (Dkt. 1 at 3; Dkt. 44 (St. ¶ 4–6).) McLean was employed by Metropolitan from June 2002 until May 2011, when she was laid off along with all of her co-workers as part of a facility-wide lay-off following the sale of Metropolitan to an outside buyer. (St. ¶ 6.) McLean was not working at the time of

the sale and resulting layoffs because she had left for a work-approved medical leave of absence on the basis of her arthritic knee, which was deemed a disability.  (St. ¶ 5; Dkt. 1 at 3.)

McLean does not claim that she was wrongfully terminated.  Rather, McLean alleges in her complaint that, prior to her approved medical leave and subsequent lay-off, her direct supervisor, Florence Haynes, discriminated against her on the basis of her age, race, and national origin.  (Dkt. 1 at ECF 8.)[2]  Haynes also is a black woman, from Trinidad, and is approximately six years older than McLean.  (Dkt. 42-5 at 1.)

McLean alleges in her complaint that Haynes, as her supervisor, harassed and abused her by, *inter alia*, calling her names such as "old, dumb, and stupid," singling her out for undesirable work assignments, displaying favoritism towards other workers, and not giving her overtime assignments.  (Dkt. 1 at ECF 8.)  Additionally, in her opposition to the motion, McLean for the first time asserts that Haynes mistreated her based on age and race by saying "If you weren't too old, you can go back to school and learn how to do your job right," and "you light-skinned people don't like to work."  (Dkt. 40 at ECF 3.)  She also claims that Haynes told her that "Americans are lazy and she can do [McLean's] job better than [her] because [McLean] was too old and incompetent."  (Dkt. 1 at ECF 4.)

McLean also alleges that she was unfairly transferred from her position on the seventh floor of the facility, which was under Haynes's supervision, to the supervision of another supervisor on the eighth floor.  (Dkt. 40 at ECF 3.)  McLean believes that Haynes unfairly criticized her work performance.  (St. ¶ 12.)  Haynes told McLean she was a "troublemaker" who "didn't work right."  (St. ¶ 13.)  Despite McLean's complaints of unfair treatment, she also

---

[2] Citations to "ECF" reference the pagination of the Court's Electronic Court Filing system, and not the document's internal pagination.

believes that Haynes treated other employees under her supervision in a similar fashion, at least with respect to verbally mistreating them. (St. ¶ 16.) As a result of the alleged mistreatment, McLean complained about Haynes's treatment of her to Metropolitan's Director of Nursing, Marie Dizon, who directly supervised Haynes. (St. ¶ 17.) Following the complaints, Dizon determined that McLean's complaints of unfair treatment were unfounded and that Haynes treated McLean no differently than other employees under her supervision. (St. ¶¶ 18–19.) Dizon nevertheless transferred McLean from the seventh floor to the eighth floor, where she would have a different supervisor. (St. ¶¶ 20, 23.) Dizon states that she did so not because she found McLean's complaints to be credible, but in order to make McLean more "comfortable and productive." (Dkt. 42-9 ¶ 10.)

Approximately three years after her transfer to the eighth floor, McLean complained to Dizon about her new supervisor, Brenda Wyllie, who McLean claimed was favoring other workers and singling her out for undesirable work assignments. (St. ¶¶ 23–24.) McLean particularly complained of an assignment she received in which she was required to transfer a resident's belongings to another floor. (St. ¶ 24; Dkt. 1 at ECF 8.) McLean alleges this task was unfair because she was singled out for the duty. (Dkt. 1 at ECF 8.) McLean admits, however, that Dizon sent other employees to assist with the task, at McLean's request. (Dkt. 1 at ECF 8.) Nevertheless, as a result of McLean's complaints, Dizon again agreed to transfer McLean, this time from the eighth floor back to the seventh floor, where Haynes remained as supervisor. (St. ¶ 25.)

Importantly, McLean in her complaint does not accuse her eighth floor supervisor of discriminating against her, but claims that Wyllie was a "good friend" of Haynes. (Dkt. 1 at ECF 8.) McLean in her complaint also alleges that the one-day suspension she received for failure to

comply with workplace guidelines was motivated by discrimination.  (Dkt. 42-9 ¶¶ 10–12; 42-8 at 94.)   However, McLean was suspended for transferring a resident from a bed to a chair without assistance from another employee, which is a significant violation of hospital procedure. (St. ¶ 27.)  Dizon was the supervisor who imposed the suspension on McLean.  (St. ¶ 26.)

II.     Administrative Investigations

Prior to filing this lawsuit, on September 23, 2009, McLean submitted a complaint for discrimination with the New York State Division of Human Rights ("NYSDHR") (Dkt. 42-2; Dkt. 42-5 at 1.)  In response to the complaint, the NYSDHR conducted an investigation, at the conclusion of which it issued a Determination and Order After Investigation in which it found that "there is no probable cause to believe that [Metropolitan] has engaged in or is engaging in the unlawful discriminatory practice complained of."   (Dkt. 42-5 at 1.)   The investigation concluded that:

> [T]here is no evidence in the file to support that complainant's Trinidadian supervisor Ms. Haynes, who is 6 years older [than] the complainant, subjected her to discriminatory conduct based on her age & national origin.  Complainant was treated in a manner consistent with respondent's transfer policy, when complainant requested a transfer, to not be supervised by [Ms. Haynes], said request was granted.  Notwithstanding, when complainant reported her supervisor, Ms. Wally [sic] because of her failure to manage a work related situation to her satisfaction, [Metropolitan] opted to move the complainant again.

(Dkt. 42-5 at 3.)  The NYSDHR further found that the "[o]ther matters having to do with job assignments, overtime & lunch breaks fall under the general auspices of the alleged disparate treatment, complainant ascribed to [Haynes], but which has not been substantiated by the facts." (Dkt. 42-5 at 3.)

Following the NYSDHR investigation and before filing suit, McLean submitted a complaint to the United States Equal Employment Opportunity Commission ("EEOC") asserting age and racial discrimination.  (Dkt. 1 at ECF 7.)  On March 31, 2011, the EEOC closed its

investigation by adopting the findings of the NYSDHR, and issued a right to sue letter.  (Dkt. 1 at 7.)  McLean then initiated this action on June 23, 2011.  (Dkt. 1.)

*SUMMARY JUDGMENT STANDARD*

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986).  "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Department*, 613 F.3d 336, 340 (2d Cir. 2010); *see Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial.  *Spinelli v. City of N.Y.*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005).  The

nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008).  In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

Local Civil Rule 56.1(b) "requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. . . . If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("The facts set forth in a moving party's statement 'will be deemed to be admitted unless controverted' by the opposing party's statement.") (citing Local Rule 56.1(c)); Local Civ. R. 56.1(a)–(c).  "[A] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz*, 258 F.3d at 74; *see also N. Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008).  "[A]llegations . . . cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." *Holtz*, 258 F.3d at 73; *see also Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 245 (2d Cir. 2004) ("[T]he district court may not rely solely on the statement of undisputed facts contained in [a] 56.1 statement . . . [and] must be satisfied that the citation to evidence in the record supports the assertion.").  "[W]here there are no[ ] citations or where the cited materials do not support the

7

factual assertions in the [56.1] Statements, the Court is free to disregard the assertion," *Holtz*, 258 F.3d at 73–4 (quotations and citations omitted), and review the record independently. *Id.* at 74. However, "[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) (quotations and citations omitted); *see also 24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 429 F.3d 39, 46 (2d Cir. 2005); *Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (holding that Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute").

The failure to submit a Rule 56.1 counterstatement in opposition to a motion for summary judgment motion does not mean that the motion is to be granted automatically. Where a party chooses not to respond to a movant's motion for summary judgment, the district court still is obligated to determine whether summary judgment is appropriate. *See Fabrikant v. French,* 691 F.3d 193, 215 n.18 (2d Cir. 2012); *Vt. Teddy Bear Co.,* 373 F.3d at 244 ("[W]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.") (internal citations and quotation marks omitted). An unopposed motion for summary judgment may be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (citations and internal quotation marks omitted).

The Second Circuit has provided additional guidance with respect to motions for summary judgment in employment discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact," *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), and "may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

*DISCUSSION*

II.   <u>*McDonnell Douglas* Burden-Shifting Framework</u>

Title VII, ADA, and ADEA claims all are analyzed using the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Weinstock v. Columbia Univ.*, 224 F.3d 33, 41–42 (2d Cir. 2000); *Holtz*, 258 F.3d at 76. Under this framework, to defeat a motion for summary judgment the plaintiff must first establish a prima facie case of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). The plaintiff's burden to establish a prima facie case is "*de minimis*." *Tomassi v. Insignia Fin. Grp,*

*Inc.*, 478 F.3d 111, 114 (2d Cir. 2007).  If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises, and the burden of production shifts to the defendant to set forth a legitimate, non-discriminatory justification for its adverse employment action against the plaintiff.  *Hicks*, 509 U.S. at 506–07.  After the defendant comes forward with a non-discriminatory reason, the "presumption [arising from the prima facie case of discrimination], having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture."  *Hicks*, 509 U.S. at 510–11.  The plaintiff then must offer evidence that the defendant's purported reason is a mere pretext for unlawful discrimination.  *Weinstock*, 224 F.3d at 42.  At this stage, "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false[.]"  *Id.* (citing *Van Zant v. KLM Royal Dutch* Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotations omitted)).  Although the *McDonnell Douglas* framework shifts the burden of production between plaintiff and defendant, at all times the burden of persuasion rests with the plaintiff to demonstrate discrimination, *Hicks*, 509 U.S. at 518, and the ultimate issue to be determined is "discrimination *vel non*[.]"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

III.     Consideration of NYSDHR's Findings

At the outset, and although Metropolitan makes no mention of it, the Court considers whether the NYSDHR's finding of no probable cause has any preclusive effect as to the claims or issues raised by McLean's complaint here.  Following its investigation, the NYSDHR on December 31, 2010 determined that there was no probable cause to find that Metropolitan had engaged in discriminatory practices against McLean.  (Dkt. 42-5 at 1.)  Ordinarily, a determination of the NYSDHR, by itself, does not have res judicata effect as to subsequent

federal claims unless a state court has reviewed and adopted those findings. *See Yan Yam Koo v. Dep't of Buildings of City of N.Y.*, 218 Fed. App'x 97, 99 (2d Cir. 2007) (summary order) ("preclusive effect attached once the state court reviewed and affirmed the [NY]SDHR's finding of no probable cause"). Here, no state court has reviewed the NYSDHR's finding of no probable cause, so the NYSDHR's conclusion does not automatically preclude McLean's complaint.[3]

Although res judicata might be applied based on the findings from administrative proceedings that were adjudicatory in nature, the record in this case does not clearly establish that the NYSDHR was acting in an adjudicatory, as opposed to an investigatory, capacity with respect to McLean's complaint. *See Evans v. N.Y. Botanical Garden*, 2002 WL 31002814, at *5 (S.D.N.Y. Sept. 4 2002) (citing *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 499 (1984) ("the doctrines of res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law") (internal citations omitted)). NYSDHR investigations may be considered adjudicatory where a so-called "confrontation conference" is held, during which the parties have the opportunity to present evidence and confront each other's witnesses and evidence. *See Yates v. Philip Morris, Inc*., 690 F. Supp. 180, 183 (S.D.N.Y. 1988); *see also Evans*, 2002 WL 31002814, at *5 (administrative proceeding was adjudicatory where it employed "procedures substantially similar to those used in a court of law"). However, where no such conference occurred, it is unlikely that the NYSDHR was acting in an adjudicatory

---

[3] Although un-reviewed state administrative findings may be granted preclusive effect with respect to subsequent federal civil rights claims, those instances are reserved for cases in which a plaintiff was represented by counsel at the administrative stage, which is not the case here. *See Benson v. North Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 328 (E.D.N.Y. 2007).

capacity, and no preclusive effect need be afforded to its determinations. *Philip Morris Inc*., 690 F. Supp. at 183–84.

Even though preclusive effect has been applied to administrative findings where the "complainant was *pro se* in the administrative adjudication, no judicial-style hearing was held, and a decision was reached on the basis of an incomplete record," the Court declines to do so under the facts here, and because Metropolitan has not set forth a basis for applying res judicata. *Reubens v. N.Y. City Dep't of Juvenile Justice*, 930 F. Supp. 887, 891 (S.D.N.Y. 1996) (citing *Ibrahim v. N.Y. State Dep't of Health*, 692 F. Supp. 1471, 1473 (E.D.N.Y. 1988)); *see also Kirkland v. City of Peekskill*, 651 F. Supp. 1225, 1230 (S.D.N.Y.), *aff'd* 828 F.2d 104, 107–09 (2d Cir. 1987) ("The fact that NYSDHR never held a formal hearing in this case does not deprive its determination of res judicata effect.").[4]

Nevertheless, although the NYSDHR determination of no probable cause does not preclude McLean's claims (res judicata) or definitely establish certain facts (collateral estoppel), the Court finds that the agency's determination has some persuasive value. McLean notably failed to provide evidence rebutting NYSDHR's conclusion during the administrative process. McLean's only response to NYSDHR's determination was the statement that "I disagree with The Division of Human Rights that there is no probable cause to believe that the respondent

---

[4] The Court similarly declines to apply collateral estoppel with respect to the NYSDHR's factual findings because the record does not establish that McLean had a "full and fair opportunity" to litigate her claims in the NYSDHR proceeding. *See Kremer v. Chemical Construction Corp*., 456 U.S. 461, 483–85 (1982); *NML Cap., Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 185 (2d Cir. 2011) (collateral estoppel should only be applied if complainant had a "full opportunity to present on the record, though informally, [her] charges against [her] employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to [her] own testimony."); *Alcena v. Raine*, 692 F. Supp. 261, 268 (S.D.N.Y. 1988) (citing *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 117 (2d Cir. 1987)).

engaged in or has engaged in discriminatory practice.  The investigation should have reviewed the facts that although Ms. Haynes is older than I am she still discriminated against me because of my race origin and my age." (Dkt. 42-6 at ECF 4.)  Thus, the Court accords some persuasive value, as noted herein, to NYSDHR's findings regarding the same claims McLean has raised in this action.

III.    Prima Facie Case

To establish a prima facie case of racial discrimination, McLean "must show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)).  A plaintiff's burden at this stage is one of production, not persuasion, and accordingly involves no credibility assessments.  *Reeves*, 530 U.S. at 143.

Although Metropolitan concedes that McLean has established a prima facie case of discrimination, (Dkt. 43 at 11), the undisputed facts indicate that McLean has not met her burden as to the third and/or fourth elements of a prima facie case for her claims.  The Court, therefore, considers these elements as they relate to each of Plaintiff's claims.[5]

a.    Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  *City of Syracuse*, 673 F.3d at 150. Examples that may constitute adverse employment actions include "termination, a demotion

---

[5] There is no dispute that the first two elements are met.  First, McLean, an African-American woman over the age of 40, belongs to a protected class with respect to her age, race, national origin (vis-à-vis Haynes, a Trinidadian), and disability (arthritic knee).  Second, there is no evidence indicating that McLean was not qualified for the position of nursing assistant.

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  Any change in employment, however, must be "more disruptive than a mere inconvenience or an alteration of job responsibilities" to constitute an adverse employment action.  *Id.* (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)); *see also Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (to constitute an "adverse employment action," plaintiff must present evidence that the employment action deprived plaintiff of some "tangible job benefits such as compensation, terms, conditions, or privileges of employment") (internal quotations omitted).

A plaintiff also may satisfy its burden by showing that the new work assignment was "materially less prestigious, materially less suited to his [or her] skills and expertise, or materially less conducive to career advancement." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000).  However, "[c]hanges in assignments or duties that do not 'radical[ly] change' the nature of work are not typically adverse employment actions." *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 233 (E.D.N.Y. 2012) (citing *Galabya*, 202 F.3d at 641).  A "bruised ego", a "demotion without change in pay, benefits, duties, or prestige", or "reassignment to [a] more inconvenient job" all are insufficient to constitute a tangible or material adverse employment action." *Johnson v. Cnty. of Nassau*, 480 F. Supp. 2d 581, 595 (E.D.N.Y. 2007) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Finally, "there must be a link between the discrimination" and the loss of some "tangible job benefits." *Alfano*, 294 F.3d at 373.

Here, the adverse employment actions alleged by McLean are her transfer from the seventh floor to the eighth floor and back again, her one-day suspension, and her purported denial of opportunities to earn overtime pay.  (Dkt. 1 at ECF 8–9.)  The undisputed facts fail to show that the floor transfers constituted adverse employment actions.  However, Plaintiff's one-day suspension and the denial of overtime opportunities, if proven, could constitute adverse employment actions.

i. <u>Floor Transfers</u>

"The Second Circuit has spoken regarding the types of employment transfers which may constitute adverse action.  The law dictates that 'a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career.'"  *Whethers v. Nassau Health Care Corp.*, 06-CV-4757(DRH), 2013 WL 3423111, at *6 (E.D.N.Y. July 8, 2013) (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006)).  "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action."  *Johnson*, 480 F. Supp. 2d at 586 (citing *Kessler*, 461 F.3d at 207).

Even construing the facts in the light most favorable to McLean, McLean has not satisfied her burden of demonstrating that the transfers at issue in this case constituted adverse employment actions.  McLean has not argued, and has not submitted any evidence tending to show, that either transfer constituted a "change in assignments or duties" that "radically changed" the nature of McLean's work.  *See Weisbecker*, 890 F. Supp. 2d at 233 (citing *Galabya*, 202 F.3d at 641).  There is no basis to conclude that the transfers deprived McLean of any tangible job benefit such as compensation or terms of employment.  (*See* Dkt. 42-9 ¶ 9) ("Neither transfer

affected McLean's compensation in any way.").  In addition, the evidence does not demonstrate that the transfers even amounted to as much as a "mere inconvenience" or a change in duties, which by themselves, would not, in any event, constitute an adverse employment action.  This finding is buttressed by the fact that, as the NYSDHR concluded in its investigation, McLean specifically requested her first transfer, from the seventh to the eighth floor.  (Dkt. 42-5 at 2) ("Complainant stated that her relationship with Ms. Haynes during said time was so contentious that she requested a transfer, which was granted."); (Dkt. 42-5 at 3).  That McLean requested the transfer belies the contention that the transfer constituted an adverse employment action, because it is unlikely that McLean would seek a lesser position, or one in which she was worse off.  Although McLean later objected to her re-transfer back to the seventh floor (*see* Dkt. 42-4), the fact that she objected and viewed the transfer negatively does not render the transfer an adverse employment action where there is no evidence to show that the transfer resulted in a material change in assignments or duties.

The district court's decision in *Whethers v. Nassau Health Care Corporation*, 06-CV-4757(DRH), 2013 WL 3423111 (E.D.N.Y. July 8, 2013), is instructive.  There, the plaintiff alleged that she had been discriminated against on account of her race when she was transferred to a different department of the defendant's hospital.  *Whethers*, 2013 WL 3423111, at *2.  The *Whethers* plaintiff was transferred to the defendant's medical records department following her complaints that her supervisor was discriminating against her.  *Id.*  The defendant claimed it transferred the plaintiff to address "departmental shortages" following the laying off of more than one hundred employees.  *Id.*  As a result of the plaintiff's transfer, she no longer performed her prior tasks as a "Diversity Representative," which involved being a typist, working directly with the office's administration, and investigating employee complaints.  *Id.*  Instead, she only was

16

assigned to "pull files and copy charts." *Id.* at *1–*2.  Subsequent to her transfer to the medical

records department, the plaintiff took a medical leave of absence, during which time she applied

for and received long-term disability benefits due to a severe medical condition.  *Id.* at *3.  The

plaintiff ultimately did not return to work, electing instead to retire and to receive retirement and

disability benefits.  *Id.*  The plaintiff later brought suit, alleging employment discrimination in

her transfers, among other things.  *Id.*

      In addressing whether the plaintiff had suffered an adverse employment action, Judge

Hurley concluded that several prior transfers within various departments did not amount to

adverse employment actions because the plaintiff experienced no diminution in job

responsibilities in any way that constituted a "setback" for her career.  *Id.* at *7.  Judge Hurley,

however, found that the transfer to the medical records department could be considered "a

change in responsibilities so significant as to constitute a setback to the plaintiff's career," where

the plaintiff no longer had the duties associated with her prior position, and instead was relegated

to merely pulling files and copying charts.  *Id.* (citing *Kessler*, 461 F.3d at 209).[6]  Judge Hurley

denied summary judgment, finding that this change in job responsibilities created a genuine issue

of fact as to whether the transfer actually constituted an adverse employment action.  *Id.*

      By contrast, here, McLean does not set forth a basis to conclude that the transfers from

the seventh floor to the eighth floor, and back again, involved a change in job responsibilities,

compensation, benefits, or conditions of employment, or that she experienced a change in

assignment or duties that radically changed the nature of her work.  *See Weisbecker*, 890 F.

Supp. 2d at 233.  Moreover, there is no evidence that the transfers operated in any way as a

---

[6] Additionally, the evidence demonstrated that a prior workplace transfer involved moving the
plaintiff to "a trailer shed that was very small, very cold in temperature, and infested with ants."
*Id.* at *7.

"setback" in McLean's career.  McLean has not alleged nor provided evidence that there was a difference, let alone a material one, in the responsibilities, duties, prestige, benefits, compensation, or workplace conditions between the seventh and eighth floors.[7]  Rather, it is clear from the record that her transfers were strictly lateral and did not involve any diminution in Plaintiff's responsibilities or the prestige of her position, her pay or other benefits.  Nor did either transfer constitute a material change in Plaintiff's employment conditions.  Accordingly, McLean has not raised a triable issue of fact as to whether the transfer resulted in a "demotion in form or substance" which rises to "the level of a materially adverse employment action." *Galabya*, 202 F.3d at 641 (citing *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

ii.  <u>One-Day Suspension and Overtime Pay</u>

There is no question that a one-day suspension constitutes an adverse employment action insofar as it results in a loss of pay and has a negative impact on one's employment record and workplace reputation.  *See Sanders*, 361 F.3d at 755 (adverse employment actions include "termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."); *Alfano*, 294 F.3d at 373 (to constitute an "adverse employment action," plaintiff must present evidence that the employment action deprived plaintiff of some "tangible job benefits such as compensation, terms, conditions, or privileges of employment") (internal quotations omitted).  It is undisputed that McLean received a one-day suspension in May 2009.  (Dkt. 1 at ECF 9.)

---

[7] Indeed, the NYSDHR found that the fact that McLean requested the transfers suggested that she did not consider either transfer to be a demotion in any respect.  (Dkt. 42-5 at 3.)

With respect to McLean's claim that she was denied opportunities to earn overtime pay, this claim, if proven, could constitute an adverse employment action because it resulted in a loss in compensation. *See Alfano*, 294 F.3d at 373. However, the undisputed facts demonstrate that McLean was not denied the opportunity to earn overtime. Other than asserting that she was denied overtime opportunities, McLean has not pointed to any evidence suggesting that this is a genuine issue of disputed fact. *See Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (to defeat summary judgment, the non-moving party must adduce "some hard evidence showing that [her] version of the events is not wholly fanciful"). Accordingly, the only adverse employment action that a jury could find would be McLean's one-day suspension. In any event, as discussed below, McLean has failed to demonstrate any discriminatory intent with respect to any of the adverse employment actions she has alleged.

     b.    <u>Discriminatory Intent</u>

Regarding the fourth element of her prima facie case, McLean must provide a basis to infer that any adverse employment actions taken against her were motivated by an intent to discriminate. The Supreme Court has described a plaintiff's burden to establish an inference of discriminatory intent as "'minimal.'" *Holcomb*, 521 F.3d at 139 (citing *Hicks*, 509 U.S. at 506)). Here, however, even drawing all permissible inferences in McLean's favor, McLean has failed to set forth sufficient evidence to support an inference that Metropolitan acted with a discriminatory intent with respect to any of the alleged adverse employment actions taken against McLean.

McLean's discrimination claims all center on the conduct of her direct supervisor, Haynes, a Trinidadian woman who is older than McLean. McLean alleges that Haynes treated McLean poorly at work on account of McLean's age, race, and national origin. (Dkt. 40 at ECF 3; *compare* Dkt. 1 at 3 *with* Dkt 42-5 at 3.) However, the undisputed facts demonstrate that

19

Haynes had no role or involvement in McLean's floor transfers or one-day suspension.  In addition, the undisputed facts fail to demonstrate that Haynes denied McLean overtime opportunities based on a discriminatory motive or treated McLean differently than other nurses with respect to overtime opportunities.  Thus, McLean cannot establish the fourth element of a prima facie case.

    i. <u>Lack of Connection Between the Alleged Discriminatory Intent</u>
      <u>and Any Adverse Employment Action</u>

  As demonstrated by the undisputed facts, the decisions to transfer McLean between the seventh and eighth floors and to impose a one-day suspension were made by Dizon, without input from Haynes.  (Dkt. 42-9 ¶ 8.)   The evidence indicates that Dizon took efforts to accommodate McLean by transferring her from the seventh to the eighth floor, away from Haynes, about whom McLean complained to Dizon.  (Dkt. 42-9 ¶¶ 4–5.)  Years after her initial transfer, McLean again complained to Dizon of unfair treatment, this time at the hands of her new supervisor, Brenda Wyllie, who McLean alleges is a "good friend" of Haynes.  (Dkt. 42-9 ¶¶ 6–7; Dkt. 1 at ECF 8.)   Based on McLean's complaint, Dizon decided to move McLean back to the seventh floor.  (St. ¶ 25.)

  McLean does not allege, nor does the evidence show, that Haynes was involved in either the decision to transfer or suspend McLean.  Indeed, McLean acknowledges that Dizon, who was responsible for both transfers and the suspension, was not discriminatory in making these decisions, and does not accuse her of discrimination.  (St. ¶ 21; Dkt. 40 at ECF 3) ("When Marie Dizon made a decision based on complaints, it was handled without discrimination.").[8]

---

[8] Even assuming *arguendo* that Haynes harbored racial or age-based animus toward McLean and that Haynes provided input in McLean's transfers or suspension,  "[t]he discriminatory animus of intermediate supervisors who have input in the decisionmaking process will not give rise to liability if the supervisor with final authority bases an adverse employment action exclusively on

While McLean asserts that Haynes made comments to her that reflected racial and age-based discrimination (Dkt. 40 at ECF 3), those comments are insufficient to raise an inference of discrimination without a link between the comments and an adverse employment action. *See Johnson v. Cnty. of Nassau*, 480 F. Supp. 2d 581, 599–600 (E.D.N.Y. 2007) (finding that a comment by plaintiff's supervisor was a "stray remark" that was "insufficient to raise an inference of discrimination because there [was] no nexus between his remark and any of the alleged adverse acts."); *Tomassi*, 478 F.3d at 115 ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."); *see also Whethers*, 2013 WL 3423111, at *10 ("[a] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.").[9] Here, as in *Whethers* and *Johnson*, McLean has failed to explain, let alone provide evidence, showing how Haynes's comments, even if made, can "be legitimately tied to" McLean's floor transfers or suspension. *Whethers*, 2013 WL 3423111, at *10. In short, McLean "has identified no evidence, whether direct or circumstantial, that would permit a reasonable fact-finder to draw an inference that [the adverse employment action, *i.e.*, the floor transfers and the one-day suspension,] was the result of unlawful discrimination against [her]." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 182 (S.D.N.Y. 2009) (citing *Velez v. SES Operating Corp.*, 07-CV-10946(DLC), 2009 WL 3817461, at *9 (S.D.N.Y. Nov. 12, 2009)).

The same is true for McLean's overtime claim, even though it was Haynes who, according to McLean, denied McLean the opportunity to earn overtime pay. (*See* Dkt. 1 at ECF

an independent evaluation." *Fullard v. City of N.Y.*, 274 F. Supp. 347, 357 (S.D.N.Y. 2003).

[9] Despite asserting that these statements were made "in front of . . . peers," McLean offers no evidence beyond her own statement that these comments were made. (Dkt. 40 at ECF 3.)

8.)  First, McLean does not submit any evidence showing that she was, in fact, denied overtime to which she was entitled.  Construing McLean's complaint in the light most favorable to her, the only claim McLean makes with respect to overtime is that Haynes did not give her as much overtime as another supervisor or "as much overtime as [McLean] wanted."  (Dkt. 42-5 at 3.) But, the fact that McLean may have received more overtime from other supervisors does not show that Haynes denied McLean overtime.  Rather, to make this showing, McLean would have to show that Haynes afforded McLean fewer opportunities to earn overtime than Haynes did her other supervisees.  McLean has offered no such evidence.  Second, even assuming *arguendo* that there is evidence that Haynes denied McLean overtime, McLean has failed to submit any evidence or explain how this denial was motivated by Haynes' allegedly discriminatory attitude, as manifested by Haynes's purported remarks about McLean's race and age.  McLean offers no evidence of a causal connection.  Accordingly, there is no basis in the record that would permit a reasonable jury to find that McLean was denied overtime or that she was denied overtime based on a discriminatory purpose.

### ii.  Lack of Evidence of Disparate Treatment

In the absence of direct evidence of discrimination, a plaintiff may present circumstantial evidence showing that the plaintiff was treated less favorably than similarly situated colleagues outside of the plaintiff's protected class.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *Whethers*, 2013 WL 3423111, at *9.  Under a disparate treatment analysis, an inference of discrimination can be raised by "showing that an employer treated [an employee] less favorably than a similarly situated employee outside [her] protected group."  *Ruiz*, 609 F.3d at 493 (internal quotation marks omitted).

McLean has not proffered any evidence of disparate treatment that would permit the Court to infer that other, similarly situated employees outside of her protected group were not subjected to the same work requirements or discipline as McLean.  McLean has not argued or shown, for example, that her co-workers were not disciplined for the same conduct despite being "subject to the same performance evaluation and discipline standards."  *Graham*, 230 F.3d at 40. Indeed, with respect to Haynes, McLean acknowledged at her deposition that Haynes treated her similarly to other employees:

> Q:    Did Ms. Haynes have a reputation for being a micro manager?
>
> A:    I don't know how to answer that.  Let me see.  She was beyond that.  She spoke to me like that and she spoke to other employees like that, too, but the other employees weren't complaining like me because they were afraid to complain[]."

(Dkt. 42-8 at 83:16–23.)

McLean also does not claim that Dizon treated her differently than other, similarly situated employees outside her protected class.  In fact, the undisputed evidence shows that Dizon treated McLean treated far more favorably than these other employees with respect to the conduct that led to McLean's suspension.  McLean received a one-day suspension for failing to comply with departmental procedures, which requires two people to execute the transfer of a patient from a bed to a chair.  In violation of the policy, McLean transferred the patient on her own without assistance.  (Dkt. 42-9 ¶¶ 10–11.)  Within the year prior to McLean's suspension, four other employees were terminated outright for failing to comply with Metropolitan's two-person bed-to-chair transfer protocol, while McLean received only a one-day suspension.  (Dkt. 42-9 ¶ 11; St. ¶ 26.)  McLean acknowledges that such a violation was a zero-tolerance, terminable offense.  (St. ¶ 27.)  McLean also acknowledges that Dizon did not discriminate against McLean in any way.  (St. ¶ 21; Dkt. 40 at ECF 3; *see also* Dkt. 42-8 at 28–29 ("Ms.

Haynes was the only one that really discriminated against me").) Thus, there is no evidence that McLean was treated less favorably than similarly situated colleagues outside her protected class with respect to her suspension.

McLean also points to no evidence that she was treated differently with respect to her floor transfers. Indeed, given that McLean specifically requested these transfers *and* the transfers were granted, there can be no such inference of disparate treatment.

Lastly, the record fails to demonstrate that McLean was treated differently than similarly situated employees outside her protected class with respect to overtime opportunities. (Dkt. 39 at 1.) At most, McLean claims that "when she worked with her favorite supervisor [], she was given as much overtime as she wanted; but that, when she worked with Ms. Haynes, she only was given 3 days." (Dkt. 42-5 at 2.)[10] However, the mere fact that one supervisor permits an employee less overtime than another supervisor does not permit an inference of disparate treatment. Even assuming that Haynes allowed McLean less overtime opportunities than another supervisor, this fact does not establish disparate treatment.[11] Rather, McLean would have to show that Haynes, *not other supervisors,* gave other employees outside McLean's protected class more overtime opportunities than she gave McLean. The record contains no such evidence. Thus, McLean has failed to demonstrate that any reasonable juror could find disparate treatment or infer discriminatory intent with respect to the purported denial of overtime opportunities. *See*

---

[10]   McLean made these statements in the NYSDHR proceedings. The NYSDHR found that McLean "admitted that when she worked with . . . Haynes, [] she did receive overtime; albeit, not as much as she would have liked, which is not a basis to sustain a claim of discrimination." (Dkt. 42-5 at 2.)

[11]   It could easily be the case that Haynes treated all of her employees differently than did other supervisors. While this might show that Haynes was a stricter supervisor than most, it does not show that she discriminated against Haynes or singled her out for less favorable treatment.

*Miner*, F.3d at 471 (to defeat summary judgment, the non-moving party must adduce "some hard evidence showing that [her] version of the events is not wholly fanciful").

*CONCLUSION*

Because no genuine issue of fact exists with respect to McLean's failure to establish a prima facie case of discrimination, summary judgment is appropriate.   Accordingly, Metropolitan's motion for summary judgment is granted.   McLean's complaint against Metropolitan hereby is dismissed, with prejudice, and judgment is entered in favor of Metropolitan.

The Clerk of the Court respectfully is directed to enter judgment in Defendant's favor and terminate this action.   Each party shall bear its own fees and costs.   Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).


                              SO ORDERED:


                               /s/ Pamela K. Chen
                              PAMELA K. CHEN
                              United States District Judge


Dated: October 23, 2013
           Brooklyn, New York